# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1834, AT BOSTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM, }
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON, }

---

## Edmund Dwight *et al. versus* Robert Whitney.

In an action by commission merchants in Boston to recover back money paid to the consignor of goods sold by the plaintiffs to a trader in Salem, who failed to pay for them, the plaintiffs offered evidence to prove, that in sales by a factor in Boston, it is usual to give a credit of six months; that the amount of sales is credited immediately to the account of the principal, and charged back in case of the insolvency of the purchaser, provided the factor has not been negligent; that the factor collects debts immediately upon their becoming due, of purchasers living in the city, but that it is usual to wait one, two, or three months on country purchasers supposed to be in good credit, and that Salem, in this respect, is regarded as country; that it is not usual to drive country dealers of good credit, but to charge them with interest after a certain time ; and that it is not usual, in such cases, to give notice to the principal, of the non-payment of the debt. *Held*, that such evidence was admissible.

Assumpsit to recover a balance of $ 224·87. Plea, the general issue.

At the trial, before *Putnam* J., it was proved, that the plaintiffs were commission merchants in Boston, and that the defendant lived in Westfield ; and that the plaintiffs sold a quantity of gin for the defendant, on December 6, 1823, o

Joseph Andrews, then a trader in good credit, belonging to Salem. The sale was upon a credit of six months; which expired on June 9, 1824. Andrews continued in good credit until his death, which was on August 17, 1824, but died insolvent. The plaintiffs, on November 12, 1824, before they knew that the estate of Andrews was insolvent, rendered an account current, in which they gave credit to the defendant for the net proceeds of the gin. They charged back the amount in July 1825, and in a letter to the defendant, dated November 4, 1825, in which they explain the charge, they say, — "We have delayed notifying you of the situation of this debt, because we presumed, till very recently, that the whole or a portion of the debt would have been paid by the executors of Andrews long before this. As soon as we learnt that they had determined to represent the estate insolvent, and commissioners were appointed, we filed in this claim and charged it to your account, because we wished to have as many accounts on our old books settled as possible, intending to credit you or pay you the amount we shall hereafter receive."

It was proved that it was usual, in sales by a factor in Boston, to give a credit of six months; and that the amount of sales is credited immediately to the account of the principal, and charged back in case of the failure of the purchaser, provided the factor has not been negligent. The plaintiffs had no commission for guaranteeing the debt. There was evidence tending to prove, that punctual payment for goods sold to country dealers was not expected, and that this was well known to consignors; and that Salem, in this respect, was regarded as country; that it was usual for commission merchants to collect debts immediately upon their becoming due, of purchasers within the city; but to wait one, two or three months on country purchasers supposed to be in good credit; that country dealers usually pay a little more for goods, than persons living in the city; that the usage was, not to drive country dealers of good credit, but to charge them with interest after a certain time; and that it was not usual to give notice to the principal in such cases, of the non-payment of the debt. But there was evidence tending to show, that

commission merchants collect of all indiscriminately, when the debt becomes due, whether they live in the city or the country ; and that any extending of the credit or delay of collection, is at the risk of the commission merchant ; and that Salem is not considered as country.

It was contended for the plaintiffs, that they had not been guilty of any neglect, and having paid the money under a mistake, they were entitled to recover it back.

On the other hand, it was claimed for the defendant, that the plaintiffs, by neglecting to collect the money when it became due, had made the debt their own ; that, at any rate, giving the defendant credit in account, in November, after Andrews died, made the debt their own, notwithstanding it was not found out, until afterwards, that the estate of Andrews was insolvent ; that the plaintiffs gave no notice to the defendant, of the situation of the debt, until November 1825 ; and that if there was such a usage as the plaintiffs attempted to prove, it was void for uncertainty, and also because it would put the property of the principal at risk for the benefit of the factor.

When the cause was about being argued to the jury, to obtain their opinion whether the plaintiffs had been guilty of any neglect in transacting the business for the defendant, it was agreed that the verdict should be taken for the plaintiffs ; and if upon the facts proved they could retain it, judgment was to be entered accordingly ; otherwise the plaintiffs were to become nonsuit.

*J. H. Ashmun*, for the defendant. By law, a commission merchant having sold goods is bound to collect the purchase money as soon as it becomes due, and if it be not paid, to give notice to the principal. The report of the judge does not state any usage, but supposing the facts proposed to be proved by the plaintiffs, to have been found by the jury, the question is, whether it is competent to the plaintiffs to give evidence of such a usage of trade as they would set up. The defendant contends, that the duty of a factor to render an account of sales and to collect the debt, depends on the law merchant, and is not subject to the usage of a particular place.

The usage in question is bad for uncertainty it being " to

*Dwight*
*v.*
*Whitney*

*March* 11th
183

Dwight
*v.*
Whitney.

wait one, two or three months on country dealers," at the caprice of the factor. It is inconsistent, inasmuch as it requires the debt to be paid in six months, and yet gives a longer time than six months. It is void on account of the limitation to the subjects of it ; for nine purchasers are to pay punctually, and the tenth is to be indulged with as much delay as the factor shall please to allow him. It is without reason, for why should not the purchaser pay when the debt is due ? It is illegal, because it gives an advantage to the factor adverse to the interest of his employer ; inasmuch as it holds out an inducement to the factor to grant delay for the purpose of obtaining the custom of the purchaser. If it was not a usage binding on the world at large, there was no knowledge of it on the part of the defendant ; or at least he would presume that the plaintiffs would proceed according to the general law. As to the law respecting usage, *Ashmun* cited *Collings* v. *Hope*, 3 Wash. C. C. R. 149 ; *Diplock* v. *Blackburn*, 3 Campb. 43 ; *Todd* v. *Reid*, 4 Barn. & Ald. 210.

There can be no justification for omitting to give the defendant notice of the death of Andrews and of his estate's being represented insolvent ; so that if the usage is valid, the plaintiffs do not bring themselves within it ; but by their neglect they have made the debt their own. *Edgar* v. *Bumstead*, 1 Campb. 411 ; *Chamberlyn* v. *Delarive*, 2 Wils. 353 ; *Amory* v. *Hamilton*, 17 Mass. R. 103 ; *Goodenow* v. *Tyler*, 7 Mass. R. 45.

As a test of the plaintiffs' claim, it may be asked, when did their right of action accrue. The recharging cannot fix the time, for the debt might in the interval be barred by the statute of limitations. The time must be, when the debt became due ; and they ought to have charged it back before that time. From thence to the present time there is no moment on which the plaintiffs can fix, for the accruing of the action

*W. F. Otis*, for the plaintiffs, relied on the usage. He said that usages of trade were not to be governed by the rules of ancient common law customs, but that they were founded on the principle of assent of parties ; that it is sufficient if the usage be reasonable and certain, and of so long continuance as to warrant the presumption that contracts are

made in reference to it, and he contended that in the present
case the usage came within this description. *Lowry* v. *Russell*, 8 Pick. 361 ; *Lewis* v. *Thacher*, 15 Mass. R. 433 ; *City Bank* v. *Cutter*, 3 Pick. 414 ; *Loring* v. *Gurney*, 5 Pick. 15 ; *Smith* v. *Wright*, 1 Caines's Rep. 45 ; *Homer* v. *Dorr*, 10 Mass. R. 26 ; *Murray* v. *Hatch*, 6 Mass. R. 477 ; *Bank of Utica* v. *Wager*, 2 Cowen, 712 ; *Wood* v. *Hickok*, 2 Wendell, 501 ; *Gordon* v. *Little*, 8 Serg. & Rawle, 566 ; *Renner* v. *Bank of Columbia*, 9 Wheat. 592 ; *Harris* v. *Nicholas*, 5 Munf. 489 ; *Halsey* v. *Brown*, 3 Day, 348. As to the reasonableness of a usage, he cited Bac. Abr. *Custom, C, D*; and as to certainty, *Luttrel's case*, 4 Co. 88 ; *Hayward* v. *Cunnington*, 1 Lev. 231 ; 1 Dane's Abr. 517. The cause of action accrued when the plaintiffs, in their discretion, charged the debt back to the defendant.

*Per Curiam.* The point in controversy is, which of the
parties shall sustain the loss arising from the insolvency of Andrews. The balance claimed was advanced by the plaintiffs on the faith of being reimbursed by the defendant's funds, and if they are not so reimbursed, it is a loss to them of the same kind as if not having advanced the money, they were called upon by a suit, to pay a sum in damages, for their neglect and breach of duty, to the amount of the actual loss sustained. The case therefore is to be considered upon the same grounds and principles as if this were an action on the case for negligence.

There seems to have been a misapprehension at the trial, in respect to the reservation of this case for the opinion of the full Court. The evidence, as reported, is contradictory in regard to the usage, and it is necessary to send the case back to a jury to settle the facts. We have, however, considered the question, whether evidence of the usage attempted to be proved was admissible ; and we are of opinion that it was.

A factor is bound to conform to the instructions of his consignor as to the price of the article to be sold, the terms, and mode of payment. But in the absence of any instructions, the consignor is presumed by law to be acquainted with and to assent to the course of dealing which is *usually* practised at the same market by others in the same line of business

A factor having no particular instructions, is authorized to sell on credit, and to take a note in his own name from the purchaser.

The circumstance, that the plaintiffs gave credit for the proceeds of the sale in account, if upon other grounds they are not chargeable for the loss, does not render them liable, if the jury should be warranted by the evidence in believing that it is usual so to give credit as soon as the sale is completed and made up, although the factor do not guarantee the sale. It seems to be conceded, that during the credit, the sale is at the risk of the consignor, and of course the factor must have a right, in case of a failure of payment, for which he is not responsible, to reform his account, by charging back the amount of the bad debt.

Nor does the omission of the factor to give notice to his principal, that the debt has become due and is unpaid, in point of law render the factor liable, if no specific damage can be shown to have arisen from it. Before the death of Andrews the plaintiffs had no reason to apprehend an insolvency, and after the death nothing could have been done to secure the debt ; and even if there had been a subsisting attachment, it would have been dissolved by the death. No step to compel payment could have been taken by the plaintiffs within one year ; nor afterwards, except to obtain an equal distribution of the estate.

These circumstances therefore are of no other importance than as they connect themselves in the opinion of the jury, with the general mass of circumstances tending to show whether the plaintiffs conformed to the usual course of busi ness, and whether they conducted the defendant's business with usual skill and diligence. It is for the jury to settle these questions. In point of law, we are of opinion that the usage attempted to be proved on the part of the plaintiffs is a reasonable one ; and if the consignor did not choose to con form to it, he should have limited his factors by specifi instructions.

*New trial ordered.*